The judgment of the court was pronounced by
Eustis, C. J.
The plaintiff is a creditor of the late B. B. Breazeale, by virtue of a sale of an undivided one-half interest in a certain plantation and slaves, for which he claims a mortgage and vendor’s privilege. The object of the present suit is to obtain a decree, annulling a certain mortgage held by Payne fy Harrison, assignees of the Gas Light and Banking Company, avoiding a certain judgment confessed by the widow of the late B. B. Breazeale, in favor of the said company, and setting aside a certain sheriff’s sale of the property, in which the plaintiff has a mortgage, at which said Payne &f Harrison became the purchasers. The plaintiff also claimed a personal judgment against Mrs. Breazeale for the amount of the mortgage debt assumed by her, which does not appear to have seen contested.
The judge of the Third District Court, before whom the cause was tried, determined in favor of the validity and binding force of the mortgage, the judgment and the sheriff’s sale, but gave the plaintiff judgment against Mrs. Breazeale, for the amount of the debt claimed, and interest. From this judgment the plaintiff has appealed. The case has been elaborately argued on each of these points; and as they are distinct, it is better to examine each separately in the order in which they are presented.
And first, as to the mortgage. It bears date the 3d day of August, 1838, and was passed, in the parish of Natchitoches, before a notary public. It is executed by Breazeale in his own name and as attorney in fact of his partner, the present plaintiff, who were carrying on business as planters, under the name of Breazeale and Seawell, in the parish of Natchitoches. The power of attorney was made before the same notary. The act recited, that whereas the said Breazeale and Seawell were justly indebted, jointly and severally, unto the New Orleans Gas Light and Banking Company in the sum of forty thousand dollars, money loaned to them by said company, on the terms and conditions hereinafter set forth, and for which amount they have given their joint and several bond or obligation to said company. To secure the payment of this bond in five instalments, with the interest, their plantation and slaves in the parish of Natchitoches is mortgaged.
It appears that the loan was granted by the bank on an application made in the partnership name of Breazeale and Seawell, in February, 1838, in which it was stated, that the partnership was indebted to the commercial firm of Thomas Barrett Sf Co. of New Orleans in about the sum of $40,000, and that the proceeds of the loan might be applied to the payment of this debt. This arrangement was accordingly carried into effect. Barrett Co. were paid, and *257 the bank became the creditor of the partnership. The debt of Barrett Sf Co. originated as far back as 1834 in the accounts between that house and Breazeale and Seawell, of whom Barrett &f Co. were the factors.
The power of attorney from the plaintiff, which bears date after this application, to wit, the 20th of April following, is full and ample. It authorised Breazeale to use the name of the firm in drawing and endorsing notes and obligations, executing mortgages, &c., as he might think proper and conducive to the interest of the firm.
It is conceded, that the plaintiff knew of the debt of Barrett 8f Co., and that he consented that a mortgage should be given in order to obtain funds to effect its payment. But it is contended that the plaintiff was deceived by his partner, and that this debt was in fact not that of the partnership,- but contracted for the benefit of Breazeale alone.
It is also conceded, that the terms of the power of attorney Were sufficient to enable Breazeale to bind the plaintiff on any new contract, and that any person advancing money on the faith of such a power of attorney would certainly be protected.- We concur with the district judge in- the opinion, that the validity of the transactions between the bank and the parties who effected the loan, and consented to its application, is not affected by the state of affairs between the partners inter se. A deceit between partners has nothing to do with their obligations towards third persons who are not privy to it. There is no evidence of any connivance on the part of the bank.' The accounts of these partners have never been settled; and the knowledge which the plaintiff had of this debt to the bank, and his repeated and continued acts in relation to it, preclude any court of justice from considering it otherwise than as he himself has treated it,- from- the time of its being contracted, in 1838, when the plaintiff was in Louisiana, up to the year 1847, to wit, as a valid and subsisting obligation.
In relation to the judgment confessed by Mrs. Breazeale in favor of the bank, we find no reason for setting it aside. This judgment is for the same debt for which the mortgage was given hy Breazeale and Seawell, which Breazeale had assumed to pay when he bought out Seawell, and which Mrs. Breazeale became bound for, she having purchased the property, in 1842, at sheriff’s sale, subject to the mortgages.
We have next to consider the validity of the sheriff’s sale, by which Payne and Harrison became the purchasers of the plantation and slaves, under an execution issued on this confessed judgment by the bank against Mrs. Breazeale. We do not think the evidence establishes any fraud or unfair dealing in any of the parties in relation to the sheriff’s sale.
The question has been argued at bar, as to the sufficiency of the description in the advertisements and sheriff’s sale. The words -‘increase of the above described female slaves,” meaning those children born since the date of the mortgage, to wit, the 3d day of August, 1838, are used as words of conveyance of that portion of the slaves.
It is an elementary principle of the contract of sale, that the vendor should explain himself clearly respecting the thing sold; and the principle is peculiarly applicable to sales made under the authority of courts of justice.
In the present case it appears that the list of the slaves was taken from the act of mortgage'; the names of those since deceased being marked dead. Among those designated as dead were several females, and their issue was consequently to be included under the general term increase of female slaves. It appeal's that some forty-three slaves were held by the purchasers as having passed under *258 this denomination, without any other description. The original mortgage contained the names of but forty-five slaves, and purported to embrace their future issue.
It seems to us, that this description in the advertisement and deed would have been insufficient, under ordinary circumstances, to operate a transfer of the forty-three slaves which are held under the denomination of increase of female slaves. The description is far less definite than that which was held insufficient in a sheriff’s sale in the case of McGary v. Dunn, 1st Ann. 339. In that case tire description was “ninety pews in the Church of St. Patrick, more or less.” Code 3273, 3274. C. P. 648, 654, 655, et seq.
Whether this defect was cured by the proceedings under the monition, and to what extent these proceedings were affected by a suit in chanceiy, instituted by the plaintiff for the purpose of setting aside the sale, are questions which we have fully considered, but upon which it has not become necessary to express an opinion. A previous question has to be determined, and that is, whether the plaintiff, by his conduct in relation to this sale, has not placed himself in such a position that he cannot take advantage of this defective description of the properly to be sold.
There was a stipulation in the original mortgage to the bank, that in the event of the instalments not being regularly paid, the properly mortgaged should be sold for cash, without appraisement. A clause to this effect was usual in mortgages given to the banks. This we consider as binding upon the mortgagers, and those who hold under them. The plaintiff must be considered as a party to this act, and cannot complain of the exercise of the right of selling without appraisement, which was exercised by the bank.
The sheriff’s sale took place on the 3d of April, 1847, after the usual advertisements. The property had been for some months under seizure, and had been advertised for sale on the first Saturday in February previous, but the sale had been postponed by the agent of the creditor.
The advertisements of the property are not in evidence; but both parties assume the description which we have given from the sheriff’s deed and return to be correct.
The judgment was confessed on the first of December, 1846, and execution was issued on the fourth of that month. The description of the property, it is said by the plaintiff’s counsel, was copied from the mortgage and annexed to the writ, and the sheriff was directed to sell accordingly.
While the property was advertised for sale the plaintiff was in direct treaty with the bank for purchasing it. It was the only mode by which any part of his debt could be saved; and we accordingly find an effort was made on his part to get such terms of payment from the bank as would make the purchase advantageous to him. It appears the defendants were also in treaty with the bank for the same object, and that they and the plaintiff were in communication on the subject. The terms on which the bank was disposed to facilitate the plaintiff’s purchase do not appear to have been accepted ; and when the sale took place it appears to have been a fair one, in which the plaintiff and the bank were interested in its bringing a full price. On the 25th of January this letter was addressed by the plaintiff to the board of directors of the bank.
“ I understand that your board will meet this day, and will decide upon my proposal of the 22d inst., relative to the purchase of a portion of the plantation and slaves formerly belonging to Breazeale and myself, and advertised to be sold on the 6th proximo. In making this proposal, my sole object, as I stated, is to *259 secure a debt which constitutes all my fortune, and not to injure any person. My object now, in making this communication, is to call the attention of the board to the notice of sale of this property. By reference to this notice, it will be seen that the stock and farming utensils, though specially mortgaged to the Gas Bank, are not included with the land and negroes to be sold. It is evident, that if the plantation is sold without the stock and farming utensils, it will be sacrificed, as it will be too late to procure stock, &c., to make a crop this year, so that no one but Mrs. Breazeale will be able to purchase it. “I made a proposal to Mr. Payne day before yesterday, that all the property formerly belonging to Breazeale and myself, should be valued, and that Mrs. Breazeale should take it at the value fixed, and secure me the balance, after deducting the bank debt, allowing her six or eight years, if necessary; paying me only a small amount in cash; or should Mrs. Breazeale be not willing to take the properly according to this valuation, that I should take it, and pay the bank debts.”
Not having the advertisements before us, and forming our conclusions from the sheriff's sale and return, we must believe either that the plaintiff was mistaken in supposing the stock and farming utensils to have been omitted, (and if this were so the plaintiff could easily have shown it,) or the matter to have been afterwards corrected, as we find them included in the sale and return.
This letter brings home to the plaintiff a full notice of the advertisements, and establishes the fact, that they were examined by him, and that the description of the property to be sold, except in the instance designated, was such, as in his opinion, as would insure a fair sale. It is obvious that the plaintiff acquiesced in this description. He had his chance of buying under it, and if those who were competing with him for the aid of the bank, bought under that description, it seems to us, that on the principles of law on which courts always act in cases of this kind, it is not competent for the plaintiff to avail himself of the defective description of the property, which had passed under his eye, and which he had an opportunity of correcting. We think we are authorised to infer, as a question of fact, that the plaintiff, so far as those with whom he treated about the purchase of the property, assented to the sale in this form, and is estopped from contesting its validity on that account. Cases cited in 1 Story’s Equity Jurisprudence, sec. 384, 385, 386.
Being satisfied with the fairness of the sale, when we look at the evidence concerning the value of the property, we are far from considering the plaintiff as having established any injury to his interests by reason of the price at which it was sold. The original mortgage debt has not been satisfied by the proceeds of the property sold; for which the plaintiff stands before us as responsible. And if a re-sale were ordered, what guarantee is there that any of the parties interested will derive any benefit from it. The purchase money, some $32,000, has extinguished that amount of debt for the judgment debtor. He acquiesces in the sale. If this sale be set aside, and the property brings less, she is the loser of the deficiency as well as the mortgage creditor: — taking precedence in right of the plaintiff; — and who derives any benefit from this disturbance? This is not a case in which it is necessary to affirm this principle, but it affords a strong illustration of the obligation of courts not to overturn judicial sales, without securing the rights of those who hold to them. Since this sale the region of country in which this plantation is situated has been inundated by an unusual flood of the Red River, and we are unfortunately menaced this year with a recurrence of The same calamity. The property might not bring one-half *260 of what it brought at the sale. Justice forbids that the interests of the debtor and seizing creditor should be put in jeopardy, unless protected from ultimate loss by adequate security to be furnished by the party seeking to set aside the sale. Coiron v. Millaudon, 3d Ann. 668.
The judgment of the district court is therefore affirmed, with costs.